Okay, so you're in front of the First District Appellate Court this morning. We are the second division consisting of Justices Aurelio Puczynski, Cynthia Cobbs, and myself, Terry Lavin. The case is 1-18-0112, the people of the state of Illinois versus, and pardon me if I mispronounce, Sakhi Hardy Johnson. The way we're doing it in the second division, everybody does a little bit in the Zoom. We'll give you about 10 minutes or so uninterrupted. At least we'll do our best to find our mute button and just not get in your way. And after 10 minutes, roughly, then we might ask you some questions and probably get your stuff done within 15 minutes, save some time for rebuttal if you're the appellant. So having said all that, let's hear from Mr. Cassidy. Thank you, your honors. May it please the court, opposing counsel. My name is Patrick Cassidy. I represent Mr. Hardy Johnson. In this matter, I'd like to reserve three minutes of rebuttal if I may. Your honors, thank you. The parties agree that this case needs to be at minimum remanded for a new sentencing hearing. And the parties further agree that the trial court violated Rule 431B during voir dire. When the court failed to ensure that the jurors understood and accepted that Sackey Hardy Johnson didn't have to testify and that his failure to do so couldn't be held against him. Whether to reverse for that error depends on the weight of the evidence and as does many other errors. So I'll begin with that. This is not an overwhelming case for the state. There was no witness to this crime. The decedent survived to talk to the police, but he did not know who shot him. The gun used was never found. And even on the state's theory of Sackey's guilt, he wasn't with the shooter. He wasn't or when the shooting occurred, he wasn't driving the trail car. He was a passenger in a second car. So the state's theory is based on fairly minimal evidence of accountability. It wasn't Sackey that brought this gun. That was Miko Buchanan, an older adult. It wasn't Sackey who shot the victim. That was Michael Mays, another older adult. And it wasn't Sackey who drove this trail car. That was Amanda Fitch, a 24-year-old adult, whereas Sackey was 17 years and five months old. He was a passenger in that car. And so he obviously couldn't use, he couldn't operate that car to distract the police if he wanted to. And the state argued, didn't argue that he did. They argued that he was another pair of eyes for Amanda Fitch. So we think this is fairly minimal evidence of accountability. And because of that, the 431B error requires reversal. The question before the jury here was what was Sackey's intent? Did he intend to aid this crime? They knew that he had declined to be the shooter. What was his intent? And if they didn't understand and accept that they couldn't hold Sackey's failure to testify against him, that's a real problem because they would naturally be wanting to hear from him. And so it was critical, you know, to hear from him on what he, on what was going through his mind. So it was critical that they understood that they couldn't hold his failure to testify against him. And so we think this, of course, should reverse for the 431B error and as well as for issue one in our brief, the confrontation clause violation. The jury here heard twice that Sackey's co-defendants had implicated him in this crime to police. At the end of an excerpt of the interrogation video played for the jury, at the very end, I believe, the police are telling Sackey, well, we've, you know, you're co-defendants. They weren't co-defendants at the time. Miko Buchanan and Michael Mays were locked up in county. We're locked up in county and we spoke to them and it was our to come talk to you. So the clear implication being that they had implicated Sackey as involved in the crime to the police. But then they heard the content itself of Mays' statement when the video of the conversation between Mr. Hardy-Johnson and Michael Mays was played for the jury, where Mr. Hardy-Johnson relates to Mays what the police had told him about what Mays had told the police. He says to Mays, the police are saying you're tricking on me and we should blame it on Miko before you blame it on me. So now the jury knows the content of what Mays told the police. He blamed it on Sackey Hardy-Johnson. He tricked on him. And so it's a confrontation clause violation because of course what Mays told the police was testimonial and Sackey Hardy-Johnson never had an opportunity to cross-examine Mays. Of course, he didn't testify and there was no prior opportunity. And this confrontation clause violation is a fully preserved error on appeal here. And so it would be the state's burden to prove beyond a reasonable doubt that it was harmless. And this the state can't do given the minimal state of the evidence supporting Sackey's conviction. So we asked that this court follow its decision in 2017 and people Ochoa recognize that this was a confrontation clause violation and remand for a new trial based on that issue, based on the 431B issue, as well as the other issues in our briefs. And at this point, I'd like to invite questions about any of the issues while we've raised before the court. Thank you. Questions from my colleagues? Just one with respect to the 431B argument. It is conceded by the parties that the trial judge did not inquire with respect to the fulvescere factor. Prior to deliberations, though, did not the court admonish the jury in its preliminary instructions that they were not to the fact that the defendant did not consider, did not testify, should not be considered by them? I believe it did, Your Honor. I think that is, I think that's present in every case. And so I think unless you know for sure, the Supreme Court wants to know that these jurors prior to the trial understand and accept that they should not be holding this failure to testify against them. The Supreme Court's concerned that that, I think at instruction, which I believe is given in every case, isn't enough, that we need to know that these jurors understood and accepted this concrete principle. So you are absolutely correct that that was given, but I don't think that cures the error, Your Honor. I believe you rely pretty heavily on the Supreme Court, U.S. Supreme Court case, Bruton. Isn't that factually pretty significantly different or distinguishable from this case? I don't, I don't think it's, I'm sure it is somewhat factually distinguishable, but I think, I don't think it's too distinguishable because we, because the content of what Mays told police was before the jury here. I think this court recognized in people via Ochoa that when, even without the content being before the jury, where the clear inference of what the police are saying is that the co-defendant implicated the defendant, that's a confrontation clause violation. Here we have, when they went a step further, we do have the content of what Mays said. So I think, and I think the principle of Bruton is still a good law. I think it Crawford, I think I had this in the, my brief said that the paradigmatic confrontation clause violation is an accomplice out of court accusation against the defendant. And that's what we have here. Okay. Thank you. That's all I have. Let's hear from your colleague. I'm sorry. I apologize. Does Judge Kuczynski have something to say? Oh, I'm sorry. I got my sound up to a hundred. Can you hear me? I can hear you now. Okay, great. The jury found him guilty of having an armed, being armed with a weapon, right? That's correct. But there's no evidence that he actually was armed with a weapon. So that must have been under a theory of accountability. Is that correct? Yes, I think that's correct. So when the judge did the enhancement, that was based on accountability for having the weapon. Is that right? Yes. Yes. Well, that would be the only reason on this record to give the enhancement. Yes. Okay. And I was just curious about the enhancement being used because the enhancement statute, I thought was pretty clear that you actually had to have a weapon and use it. So I think you're correct that the 25-year enhancement for personal discharge has to be you. Right. But the 15-year for being armed can be via accountability. I think that's what was done here, but I could be wrong. And is that, you think that's what the judge did? I think so. But if I, you're absolutely correct that only the 15-year can be via accountability. Okay. Thank you. Hey, Mr. Stevens. Morning, your honors. May it please the court. My name is Zachary Slavins and I represent the people of the state of Illinois in this case. Slavins, excuse me. Pardon me. No problem, your honor. Your honors, we asked this court to affirm defendant's conviction because he was properly convicted of first degree murder. In this case, first, even though the court may not have technically complied with rule 431B, this is not reversible error and it does not meet the burden of plain error. And also because there was no brutal violation in this case by the admission of these video clips. Turning first to the 431B issue, it is absolutely correct that the court did not perfectly comply with rule 431B in this case. However, Illinois case law has made clear that rule 431B is just one of several tools that is utilized to ensure that there is an impartial jury. And the mere non-compliance with rule 431B does not in and of itself result in a biased jury and does not get you to a reversible error. And as the court correctly noted, the jury was properly instructed that defendant's decision not to testify could not be held against him. And that is the sort of thing that has led this court in Glasper, for instance, to conclude that there is no reversible error because this is reviewed under plain error. If there's no reversible error, there cannot be plain error. However, in the alternative, the evidence in this case was not closely balanced and defendants still cannot meet the burden for reversal under the plain error doctrine. Defendant's argument that the evidence was weak largely turns on defendant's role in the particular murder. However, the mere fact that defendant was tried under an accountability theory and the mere fact that his role in the murder wound up being somewhat small does not diminish his accountability for the crime and it does not weaken the evidence. The video clips here proving defendant's evidence are his own words. He admits to knowing the idea was to murder Anderson. He admits to knowing that that was the plan when he got in the car when he went with them. He was there the gun. He went to the crime scene and he was there in the car ready to do what was necessary to ensure that the murder could occur. The mere fact that he was not ultimately required to do much more than sit in the car does not diminish his accountability and his participation in what was a successful murder plot. So that does not weaken the evidence. That evidence is unchallenged on appeal regardless of what happens with the first two issues in this case. That evidence was properly admitted is not disputed and because that evidence is not closely balanced and is so overwhelming of his knowledge and willing participation in the crime, defendant cannot meet the burden for reversal on 431B issue. Turning to the first issue, the Brutton issue. Brutton is a prohibition on a specific type of hearsay that a co-defendant implicated the Brutton that this prohibition is on express implications or evidence that is tantamount to an express implication of the defendant. And if there's not that sort of direct link between the reference conversation and the implication of the defendant, it is not a Brutton violation. Additionally, there are a number of exceptions to this. In particular here, the exception for the course of investigation, police are allowed to recount the steps that they take in the course of their investigation to enable the jury to understand why of all people in the world, the police have decided to speak to a particular defendant about a particular offense. And so long as that recounting of the investigation does not delve into the substance of conversations with other people, it is not a Brutton violation. And looking at the video here, that is precisely what we have. In exhibit 4C, the police simply tell the defendant, we spoke to these other individuals and that is why we are speaking to you today. The police do not say any details about the conversations that they had. They don't say when they had these conversations. They don't say where they spoke with them. It's simply that a conversation occurred and now we are speaking with you. And that is squarely within the exception for course of investigation. And turning to exhibit 15, the other video clip, here, Brutton is not involved at all because there is no other statement referenced. It's simply defendant's own words. Defendant is relaying various things to a co-defendant through a door, but there's no police saying we spoke to this person and this person pointed to you. It is simply defendant reciting various things. And these statements by defendant are admissions. It's not a Brutton violation or hearsay in this case. It is simply recounting what defendant himself actually said. And ultimately, defendant had no knowledge of what may or may not have said to detectives. So the fact that he's saying various things is not getting him to the bar of a Brutton violation. However, again, for the same reasons as the 431B issue, even if these video clips should not have been admitted, it is not reversible error because the admission of these clips was at most harmless. The evidence of defendant's guilt in this case is contained in a number of other video clips, which defendant does not challenge on appeal. So even if 4C or Exhibit 15 were admitted improperly, these don't contain the exclusive evidence of any element of the crime. That's all in different video clips, the admission of which is unchallenged. And those clips are, again, overwhelming evidence of defendant's knowledge and willful participation in what he knew was a plan to murder an individual. Accordingly, if this court has any questions, please do. None from me. Neither my colleagues. I have none. Okay. We'll hear from Mr. Cassidy again. I don't think it's accurate to say that Mr. Hardy-Johnson didn't know what Mays had told the police or the police. That was the basis of their interrogation was telling Mr. Hardy-Johnson what Mays and Buchanan, what they learned from Mays and Buchanan. Now, most of that did not come out before the jury because there was a motion to eliminate, but the final excerpt that we challenged on appeal did come out. And so May, secondly, Hardy-Johnson knew that Mays had implicated with the police, and then he relayed that to Mays in the overheard conversation. So now the jury knew the content. And so that's, we think it's a confrontation clause violation. It's not course of investigation for the police to, first of all, the course of investigation is something for police when they're testifying. They say, I spoke to this person and I went somewhere else. This did not come out in testimony. This was recorded prior statements of the police to Mr. Hardy-Johnson. And I'm not aware of any case that treats something set out of court as course of investigation testimony. And the clear implication of that, of their interrogation was that Mr. Hardy-Johnson had been implicated. And this is supported, again, I asked this court to rely on people via OCHOA. And I think in my reply brief, I point out that the state of the law in this country is that if the clear inference from what is said by the police is that a co-defendant has implicated a man, but of course here, the content did come in. And then the state of the evidence here, the state argues that Mr. Hardy-Johnson was ready to do what was necessary as a passenger in that car, but what was it? He couldn't operate that car in any manner to distract or obstruct the police. And so the evidence here, we're not raising a sufficiency claim. We're saying that this evidence is minimal and that the 431B error and the confrontation clause violation warrant a new trial. So we ask this court to grant the defendant a new trial. Thank you. Okay. On behalf of my colleagues, I'd like to thank both sides for very good briefs and good arguments as is usual for each of you and your individual offices. We will take the matter under advisement and you'll hear back from us within a couple of weeks.